UNION SPECIAL MACH. CO. v. QUAKER CITY FLOUR MILLS CO.

(District Court, E. D. Pennsylvania.   October 9, 1916.)

No. 107.

1. PATENTS ⬚170—NOVELTY—USE OF PRIOR ART.

While novel combinations of known elements resulting in new functions are meritorious inventions, nevertheless the Bigelow patent, No. 875,314, for a machine for sewing the mouths of filled sacks, does not, in so far as it adopted old methods known to the trade and forming no novel combination, though by reason of other additions it was a new and valuable addition to the art, deprive others of the right to use such knowledge; and so the Burghardt patent, No. 768,111, for a similar machine, is no infringement, though using such knowledge.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 245; Dec. Dig. ⬚170.]

2. PATENTS ⬚170, 176—INVENTIONS PATENTABLE—NOVELTY.

One inventing a special kind of machine to accomplish a limited purpose is entitled to be protected in its exclusive use if the means employed be novel, but if the means be old is entitled only to be protected in the exclusive use of the combination of which he was the inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 245, 250⅔–252; Dec. Dig. ⬚170, 176.]

3. PATENTS ⬚62—PRIORITIES—INFERENCE.

Every inference of priority may be drawn against a patent, where the patentee fails to answer the charge of another, who showed that he had,

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

before the issuance of the patent, made disclosures to the patentee which it was claimed were taken advantage of by him.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. ☞62.]

4. PATENTS ☞328—INFRINGEMENT—WHAT CONSTITUTES.

The Foster patent, No. 875,339, relating to machines for sewing filled sacks, *held* limited by the prior art and proceedings in the Patent Office, and, as so limited, not to be infringed by the Burghardt machine.

In Equity. Bill by the Union Special Machine Company against the Quaker City Flour Mills Company. Sur trial upon bill, answer, and proofs. Bill dismissed.

Charles L. Sturtevant, of Washington, D. C., and Joseph C. Fraley, of Philadephia, Pa., for plaintiff.

Charles C. Linthicum, of Chicago, Ill., for defendant.

DICKINSON, District Judge. The purpose of this proceeding is to have determined the question of the validity of letters patent No. 875,314 (known as the Bigelow) and No. 875,339 (known as the Foster) relating to machines for closing by a sewing seam the mouths of filled bags. The title of plaintiff is that of an assignee. The machine alleged to infringe is that described (with some modifications) in letters patent No. 768,111, known as the Burghardt patent. The grant of none of these letters patent admittedly has more than formal significance in the present inquiry.

The bearing points of the controversy can be best disclosed by a few excluding general observations. Had the field of invention upon which Bigelow entered been a virgin field, or if the defendant had used the special constructions designed by him, neither validity nor infringement would have been contested. The defendant comes, however, with this complaint. Bigelow entered upon a field already occupied, and taking, as he had the right to take, the ideas there found, which were common property, by the application of ordinary mechanical skill and adding certain features, he produced a machine differing only from those before known in the merit of its mechanical construction and in the addition of these supplementary features. When the machines of the plaintiff and defendant are compared, they are alike only in the features which each constructor borrowed from the prior art, and it is found that the defendant has not followed those features of plaintiff's machine in which invention might justly be claimed.

[1] The complaint that defendant has taken the idea of the construction of its machine from that of the plaintiff is met by the statement that the plaintiff had itself taken these ideas from the prior art. The claim of inventive merit in the supplementary features of plaintiff's machine is met by the statement that these are not found in the machine of the defendant. The defense, therefore, is that where infringement might otherwise be found plaintiff's claim to invention has no validity, and where invention might be found there is no infringement. The counter complaint is thereby provoked that the plaintiff,

through a construction which may be an improvement upon the prior art, is seeking to appropriate to itself an exclusive property in that which is the common property of all. There is this further complaint made: Bigelow was invited to collaborate with defendant in the construction of an improved machine. The ideas of construction which had become known to defendant were communicated to Bigelow and embodied in plaintiff's machine, and are now embraced in plaintiff's claim to an exclusive proprietary right.

A review of the prior art and the conditions affecting the needs of the business in which these machines are used will throw light upon the controversy. The real and nominal defendant is in the milling business, and the recital will be confined to this. Flour and other mill products were at first handled in barrels. Later, bags came into use. The closing of the mouths of the bags was done by sewing them by hand.

It is a well-known American characteristic that no American mechanic can see anything done without at once having his thoughts turned to the construction of a machine which will perform the work. As was to be expected, such machines soon appeared. The practical problem presented certain difficulties. As was to be expected, the already known sewing mechanism was brought into requisition. A change was found necessary, in that the tops of the bags could not be folded or lapped over as in the ordinary sewing operation, but must be sewed while in an upright position. The thrust of the needle must in consequence be horizontal, instead of vertical. Again, the feeding mechanism in a sewing operation must bring the material to the needle and permit it to remain until the thrust is made and the needle withdrawn. The motion is, because of this necessity, an intermittent one. The inertia and momentum of filled bags compels a continuous movement of the bag carrier, and this in turn requires the feeding movement of the top of the bag to synchronize with the carrying movement of the body of the bag, so that neither will interfere with the operation of the other. The bags, moreover, are of different lengths or heights. This calls for some means of adjusting, through a raising and lowering operation, the position of the top of the bag with the position of the needle. The sewing head must also overhang the bag carrier, and the side toward the operator be open, so as to afford ready access to the bags. The commercial value of any such device consists in the reduction of the unit cost of the operation. It must, therefore, have a capacity for rapid and economical operation, and portability adds thus to its value. The weight of the filled bags compels the presence of some support to any carrier belt which may be employed.

It is not denied that the Bigelow and Foster machine of the plaintiff answers to these requirements. Nor is merit denied to certain additional and auxiliary or adjunctive features, as they have been called. The defense presented, as before observed, eliminates these latter features, because not infringed, and meets the former by the averment that every element of invention disclosed in plaintiff's machine was borrowed from the prior art.

The fallacy of the argument (characterized as the purely Mosaic)

which denies merit to novel combinations of known elements resulting in new functions is admitted, but the presence here of any such combination is denied. The broad combinations set forth in the claims are asserted to be old. There is a denial of any novel function resulting from the use of certain elements with their limitations, because, if present, they have exactly the same action in the combinations known to the prior art, and, if omitted, it is at the expense of a lost function, so that no economy results from the omission. In other words, the plaintiff did precisely what Burghardt did. They each took the contributions of the prior art, from which, with the application of mechanical skill, they constructed a machine to do this work, adding to its operation the performance of certain auxiliary functions. They differ only in this: Burghardt admitted his debt to the prior art and claimed as his invention only the adjunctive features. The plaintiff boldly claims to take the whole of the prior art as its own exclusive property.

The real controversy between the parties is very fairly presented by plaintiff's expert in his summary of the real claims which may be made on behalf of the Bigelow patent. Whatever merit it possesses resides in the judgment required to decide what of the elements of the prior art should be accepted and what should be discarded. That judgment and skill are called for cannot be denied. This limits the discussion to an application of the distinction between the exercise of the inventive faculty and the application of the judgment and skill which the well-equipped mechanic is frequently called upon to employ. It is admittedly difficult to determine just how and where to draw this line. Perhaps the best guide to be found is that supplied by counsel for the plaintiff. In the very nature of things such aid can only be general. Certain broad facts, however, thrust themselves to the front in the consideration of the facts of this case. A clarifying summary of what they are is supplied in the analysis of any of these claims. One is that a machine for the sewing of filled bags was not a novel idea. Given the thought and purpose to build one, certain features were of obvious necessity. With respect to these the faculty of invention could be employed only in the special form of construction. It might be present in the conception of the idea of supplying the conveying force through the operation of gravity or of a positively driven carrier. If each of these means, however, had been previously employed, there would be no novelty in that conception. As in the ordinary sewing operation the movement of the needle is vertical, invention might be involved in the thought of changing the thrust to a horizontal one, in order that the tops of the bags might be sewed without the necessity of turning or bending them down, so as to be moved into a position under a vertical needle; but if this thought had been previously put into practice there would be in it no novelty. The thought of a conveying chain or belt might be said to involve invention; but, if these devices had been already in use, there would again be no novelty in their employment. The necessity, when heavy bags were conveyed, of having some support under the belt would in itself be so obvious, and a supporting table, over which the belt might be

drawn, such an obvious expedient, as that its adoption, in view of the prior art, could not be said to involve patentable invention. It seems to be a conceded fact that whatever invention is involved consists in a combination of known devices happily chosen to accomplish the desired results.

It is clear that one who takes up the problem of producing a machine to serve a useful purpose, and who accomplishes only the result of a simple and inexpensively constructed machine, to supply the place of a complicated and costly one, has earned the right to own the thing which he has thus invented, because he who saves all the functional value of a machine, after eliminating many of its features, has made a contribution to the art no less valuable than he who, through another combination, has given added functions. The test of such value, however, lies in the preservation of all the functions of the machine. Skill and judgment may call for the elimination of certain features of an existing machine. If the elimination results in a loss of function, a new combination cannot be said to be a patentable invention, because the man who does this has invented nothing; he has merely borrowed part of the prior art. The merit of the Bigelow machine would seem to consist in this: The prior art was rich in all the elements which enter into the construction of a machine for sewing filled bags. There was room for mechanical improvement in some of its parts. There was room for the elimination of some of its features at the cost of the loss of certain functions. There was room for the incorporation of other elements in order to give new functions to the machine through these adjunctive features. Bigelow accomplished this, and, because of what he did, secured the exclusive right to the machine which he had thus constructed; but he did not thereby acquire an exclusive right to what others had contributed to the art before he constructed his improved machine. When, therefore, the defendant made the same use of the prior art of which Bigelow himself had made use, and abstained from any trespass upon the rights which Bigelow had acquired in his improvements, the defendant was doing only that which it had the right to do, and the bill against it in this respect and to this extent should be dismissed.

This finding is made without regard to the charge that Bigelow was indebted to Harding for the idea incorporated in his machine. The evidence to support this charge does not come up to the measure of proof required in such cases. There is no doubt, however, that the services of Bigelow were called in to collaborate in the construction of a machine, and the dates which he himself fixes as the commencement and close of his work emphasize the view with which we have been impressed, for it carries conviction of the truth of the observation that Bigelow himself did not at the time regard himself as the inventor of a machine for sewing filled bags, but did regard himself as an improver, in that he had produced such a machine with the adjunctive features, his right to which has not been infringed by the defendant.

[2-4] This brings us to a consideration of the claims of the Foster patent. The proceedings in the Patent Office have foreclosed any

possible claim under the Foster patent to anything more than a claim to certain special forms of construction of certain parts of the machine referred to. These are embodied in claims 3, 5, 6, 8, and 9.

The experience of the Foster patent in its journey through the Patent Office was this: The original Foster application described a machine which in all its general characteristics was the equivalent of the described Bigelow and Burghardt machines. It describes also particular and alleged novel means to assure connection between the belt conveyor and its driving mechanism at any height at which, during its vertical adjustment, it may be placed. The result achieved is that the operation of the movement of the belt conveyor goes on unimpeded as it is brought nearer to or removed from the sewing mechanism. This is accomplished through the special means described. The claims at first embraced, not only this special construction, but these general features as well.

The Bigelow and Foster applications were pending in the Patent Office at the same time. There was thus a conflict of claims, and an interference was declared. Before any decision was reached on the merits of the two applications, they both passed into the ownership of the plaintiff. Following this, Foster defaulted, and a formal judgment was entered in favor of Bigelow. The broad claims were then withdrawn, and the patent issued with claims allowed which included these special features. The Bigelow application, however, covers claim 67 for a combination, including means for operating the conveying mechanism together with an adjusting mechanism for bringing the bags into any desired relation to the sewing mechanism.

As the Bigelow patent secured an award of priority over the Foster patent, the latter can only be valid as protecting the special form of gearing described. Foster, as the record stands, clearly did not invent a bag-sewing machine. All he did was to introduce a special kind of mechanism to accomplish the limited purpose indicated. The use of some means for this purpose having been employed before he described the means of which he makes use, the only query remains of whether the substitution of one such means for another constitutes patentable invention. If the means employed be novel, he would clearly have the right to be protected in its exclusive use. If the means be old, he clearly could not forbid its use by others, except as part of a novel combination of which he was the inventor.

It is to be observed that the Foster application does not make claim in terms to a combination. It is for an apparatus which embraces a special form of gearing. The general apparatus described is substantially that described in the Bigelow application. The only difference is that the one does and the other does not describe a specific form of gearing. The merit of the Foster device is claimed to lie in the speed of the conveyor keeping pace with the operation of the sewing mechanism and the former being adjustable vertically. To accomplish this the application calls for a means and then defines the special means designed. It is true the applicant declares his claim is not confined to the means he describes in all minor details, but he does limit it to these means. Bigelow and Foster intended his feeding movement to keep

pace with the sewing operation, and each meant to have the adjustable feature. Bigelow makes a broad claim to any means of doing this, and Foster claims his specifically described means, with protection against the use of modifications of it in minor details. There are several different means known to the mechanical trade by which the intended result could be reached, a mechanic being once given the thought of the result to be accomplished. A constructor who could make no claim to the idea of employing means for the purpose can surely not be permitted to lay claim to any one of these well-known means as his exclusive property. More than this, we find Foster to have been anticipated in the use of means to accomplish this purpose, which, to paraphrase his own language, while showing various minor modifications and changes, may be truly said to be of the very spirit of his claimed invention. These anticipations are so clearly shown by the record that we do not deem it necessary to restate them.

Finally, a perusal of this record brings the strong conviction that Foster has at least not made out his title to any proprietary right to such a machine as that in use by the defendant. ,Such machines were in use before his attention was drawn to them. He was brought in for the sole purpose of supplying a sewing head. The machines were shown him for this purpose. He made sketches of their other component parts, including the parts to which his claim of invention relates. In a conflict of merit claims between that which was thus shown him and that which he claims to have invented, it is not too much to ask of him that he answer the charge that he was shown what he subsequently averred he had originated, and that he give his version of the disclosures made to him. This has not been done, and in the absence of some answer every inference of priority may properly be drawn against him.

Plaintiff's bill of complaint is dismissed for want of equity, and a formal decree to this effect, with an allowance of costs to defendant, may be submitted.